THE UNITED STATES, APPELLANTS V. ONE HUNDRED AN..
TWELVE CASKS OF SUGAR, NATHAN GOODALE CLAIMANT.

This case was presented to the court on printed statements and arguments, by Mr Butler, attorney-general, for the appellants.

Mr Justice THOMPSON delivered the opinion of the Court.

The sugars in question in this case were seized by the collector of the district of Mississippi, and libelled in the district court of the United States for the eastern district of Louisiana, under the allegation that they had been falsely entered at the customhouse of the port of New Orleans, as syrup; when in fact they were casks of sugar in a state of partial solution in water. The libel charges that this entry was made by a false designation of the merchandise, with an intent to defraud the revenue

of the United States, by subjecting the article to an ad valorem duty of fifteen per cent only, instead of a specific duty of three cents and four cents per pound, if entered as sugars, which, as is alleged, they in fact were.

This seizure was made under the sixty-seventh section of the act of 1799, for the collection of duties, (3 Vol. L. U. S. 199) which authorizes the collector, when he shall suspect a false and fraudulent entry to have been made of any goods, wares or merchandise, to cause an examination to be made, and if found to differ from the entry, the merchandise is declared to be forfeited, unless it shall be made to appear to the collector, or to the court in which a prosecution for the forfeiture shall be had, that such difference proceeded from accident or mistake, and not from an intention to defraud the revenue.

The answer and claim of Goodale denies that the contents of the casks were sugar, or that they differ from the entry, or that the entry was made with intent to defraud the revenue.

After hearing the testimony offered in the cause, the court decreed, and ordered, that the property seized be restored to the claimant, upon the payment of a duty of fifteen per cent ad valorem thereupon, that the libel be dismissed, and that probable cause of seizure be certified of record.

From this decree the present appeal is taken.

The decision in this case turns entirely upon the questions, whether, in point of fact, the merchandise was different from the denomination under which it was entered; that is, whether the article was sugar, and not syrup; and if not syrup, then whether such entry was made with intent to defraud the revenue. It is deemed unnecessary to go into a particular and detailed examination of the testimony on the trial. A number of witnesses were examined on both sides, for the purpose of ascertaining the character and denomination of the article in question. It was a pure question of fact, and the nature of the inquiry admitted of nothing more certain than an expression of opinion, and which resulted, as is generally the case in such inquiries, in a difference of opinion. In such cases the court must be governed, in a great measure, by the character and intelligence of the witnesses, and the opportunities they have had of becoming acquainted with the subject upon which they are called upon to express an opinion; and the weight of the

opinion of a witness, and the influence it is to have upon the tribunal, whether court or jury, which is to decide upon it, will depend very much upon seeing and hearing the witness give his testimony. When, therefore, a case rests upon a mere question of fact, and especially when that fact is to be ascertained by the uncertain evidence of opinion, the appellate court ought to place much reliance upon the decision of the court below, and not reverse a decree, unless it is very satisfactorily shown to be against the weight of evidence.

One of the witnesses examined on the part of the United States was a chemist, who had analyzed a portion of the article in question, and found it composed of nothing but sugar, dissolved in water, and was not syrup according to his understanding; which, as he says, is prepared by pouring water on sugar, and boiling it to that consistency which prevents crystallization, and that to produce this effect it is necessary to introduce other agents, such as the white of eggs, &c. With respect to this and all other testimony of this description, it is only necessary to observe, that the denomination of merchandize, subject to the payment of duties, is to be understood in a commercial sense, although it may not be scientifically correct. All laws regulating the payment of duties are for practical application to commercial operations, and are to be understood in a commercial sense. And it is to be presumed that congress so used and intended them to be understood.

Two of the witnesses on the part of the United States who were merchants, and had dealt largely in sugars, and apparently very competent judges on the subject, testified, that sugar dissolved in water is not considered syrup, in the sense generally used in common parlance, as an article of commerce. To make syrup, the sugar must be boiled and clarified. They say that sugar barely dissolved in water is a new article, not known in common as an article of trade. Some other witnesses were examined on the part of the United States, who express an opinion that this article is not syrup. Their situation and knowledge of the article, however, do not seem to qualify them to form a very satisfactory opinion on the subject. But none of these witnesses undertake to say that the article could with any propriety be called sugar.

On the part of the claimant a greater number of witnesses were examined, one of whom was a sugar refiner, who says,

that speaking as a merchant and sugar refiner, he should con-
sider this article *syrup*. It cannot, he says, be called by any
other name. Several other merchants and dealers in sugar
concur with him. Some say the basis of all syrup is sugar and
water boiled together. That the different kinds of syrups are
produced by putting into the sugar the different articles from
which the syrup takes its name, such as orange, lemon, &c.
Some call it natural syrup ; others speak of it as an inferior
kind of syrup, but all deny that it can with any propriety be
called sugar. The district attorney testifies that when the
seizure was made, it was supposed by the collector to be the
expressed juice of the cane, boiled to a certain consistency ;
that it was not then known that it had been prepared by the
dissolution of sugar with water.

There is certainly very strong reason for suspecting that
this was done for the purpose of evading the specific duty on
sugar; especially as it is admitted on the record that the claim-
ant has an establishment at Matanzas for preparing sugar in
this manner, for the purpose of shipment to New Orleans, to
be made into refined sugar, at his establishment or refinery at
that place. Yet we do not think, under the evidence in the
cause, we, as an appellate court, ought to reverse the decree
of the court below, and decree a forfeiture, especially as we
cannot say, from the evidence, that the article, in point of fact,
differs from the entry at the customhouse. It is difficult to say
what is its true denomination. The witnesses speak of it as a
new article, not known in trade. None call it sugar. All seem
to think it may be called syrup, in some sense, though several
think it is not such, according to the understanding of that
article in trade and commerce. Upon the whole, we think
the decree of the court below ought to be affirmed, and a cer-
tificate of probable cause of seizure be certified of record.

This cause came on to be heard on the transcript of the re-
cord from the district court of the United States, for the eastern
district of Louisiana, and was argued by counsel ; on consider-
ation whereof, it is ordered, adjudged and decreed by this
court, that the decree of the said district court in this cause be,
and the same is hereby affirmed, and that a certificate of proba-
ble cause of seizure be certified of record.