## "ZANTE CURRANTS."

### In re WISE, Collector.

#### (Circuit Court, N. D. California. March 26, 1896.)

#### No. 12,102.

1. CUSTOMS DUTIES—APPEAL FROM BOARD OF GENERAL APPRAISERS—AUTHORITY OF COLLECTOR.

Under the fifteenth section of the customs administrative act of June 10, 1890, a decision of the board of general appraisers as to the classification of imported goods is subject to review in the circuit court on an application in behalf of the United States, which application may be made by the collector without first obtaining authority from the secretary of the treasury.

2. EVIDENCE—USE OF DICTIONARIES.

Dictionaries are not of themselves evidence, but they may be referred to as aids to the memory and understanding of the court. Nix v. Hedden, 13 Sup. Ct. 881, 149 U. S. 304, followed.

3. CUSTOMS DUTIES—CONSTRUCTION OF TARIFF LAWS.

The rule is well settled that, in interpreting a name or expression applied to articles upon which duties are laid, congress uses such terms in their ordinary commercial sense, rather than in their distinctive or technical sense.

4. SAME.

Whether an imported article is or is not known in commerce by the word or terms used in the act imposing the duty is a question of fact for the jury, and not a question of construction; and, in the case of an appeal from a decision of the board of general appraisers, it must be determined by the court as a question of fact.

5. SAME.

Where congress has designated an article by a specific name, and imposed a duty upon it, general terms in the same act, though sufficiently broad to comprehend such article, are not applicable to it. The article will be classified by its specific designation, rather than under a general description.

6. SAME—ZANTE CURRANTS.

"Zante currants," as used in paragraph 217 of the act of August 28, 1894, applies to the small, seedless raisins grown on the mainland of Greece, in the Archipelago, and other places in the Levant, and is not confined to currants raised only in the Island of Zante. The use by congress of the capital letter "Z" in the word "Zante" is of no significance in the construction, since grammatical propriety alone requires it.

7. SAME—REVIEW OF BOARD OF GENERAL APPRAISERS' DECISION.

The rule stated in some of the cases, that the court will not reverse the decision of the board, even if against the weight of the evidence, where there is sufficient evidence to warrant its finding, has little if any application to cases in which additional testimony of an important character is taken in the circuit court, and where the ultimate and decisive question is as much one of law as of fact.

An application and petition were filed by the collector of customs for the port of San Francisco for a review, under section 15 of the customs administrative act of June 10, 1890, of the decision of the board of United States general appraisers in relation to the classification and duty on certain currants imported by S. L. Jones & Co. The board of general appraisers held that the currants imported were not Zante currants, and therefore did not come within the provision of paragraph 217 of tariff act of August 28, 1894, commonly known as the "Wilson Bill," but did come within the provisions of paragraph 489, and were not subject to duty as being not otherwise provided for.

H. S. Foote, U. S. Dist. Atty., and Samuel Knight, Asst. U. S. Atty.

A. P. Van Duzer, for importer.

MORROW, District Judge. This is an application and petition by John H. Wise, collector of customs of the port of San Francisco, for a review of the questions of law and fact involved in the decision of the board of United States general appraisers at the port of New York in the matter of the classification of an importation of 500 barrels of currants at the port of San Francisco under the act of congress entitled "An act to reduce taxation, to provide revenue for the government, and for other purposes," approved August 28, 1894, and commonly known as the "Wilson Bill." The currants were imported on March 19, 1895, from Liverpool, on board of the

British ship Drumburton, and were invoiced as "plum pudding, label J, currants," and were so entered at the customhouse. They came originally from Patras, Greece. Thereafter, on April 12, 1895, the collector of customs classified said currants as "Zante currants," and as dutiable, under paragraph 217 of the act of congress above referred to, at the rate of 1½ cents per pound. The importers entered their protest against this ruling of the collector, and appealed to the board of general appraisers then on duty at the port of New York, claiming that said article was not Zante currants, but currants grown in the provinces of Greece, on the mainland, and therefore free of duty, as dried fruit not otherwise provided for, and that said currants were not known commercially as raisins or dried grapes. The board of general appraisers decided in favor of the importers. To reverse this decision the collector brings the question before this court, under section 15 of the customs administrative act of June 10, 1890, for a review, and for a construction of law respecting the classification of said currants, and the duty, if any, imposed thereon.

It is objected at the outset that this court has no jurisdiction of this matter, for the reasons—First, that the decision of the board of general appraisers is final; and, second, that the collector had no authority from the secretary of the treasury to bring the matter into this court for a review of the decision of the board. These objections are disposed of by the language of section 15 of the customs administrative act of June 10, 1890, which provides as follows:

"That if the owner, importer, consignee, or agent of any imported merchandise, or the collector, or the secretary of the treasury, shall be dissatisfied with the decision of the board of general appraisers, as provided in section fourteen of this act, as to the construction of the law and facts respecting the classification of such merchandise and the rate of duty imposed thereon under such classification, they or either of them, may, within thirty days next after such decision, and not afterwards, apply to the circuit court of the United States, within the district in which the matter arises, for a review of the questions of law and fact involved in such decision."

Nothing is said about first obtaining authority from the secretary of the treasury to bring the matter within the jurisdiction of the circuit court, and it is evident that no such authority is required.

The collector of customs claims that the currants in question are Zante currants, and that they are expressly included in paragraph 217 of the present tariff act, which reads as follows: "Plums, prunes, figs, raisins, and other dried grapes, *including Zante currants*, one and one-half cents per pound." The importers contend that the currants are not Zante currants, but that they are provincial currants, —that is, that they come from Patras, Greece, on the mainland, and not from the Island of Zante,—and are therefore covered by paragraph 489, which places on the free list "fruits, green, ripe, or dried not specially provided for in this act." The evidence now before the court for its consideration consists (1) of the testimony and exhibits introduced before the board of general appraisers, and incorporated in their return to the order of this court of July 17, 1895, directing them to transmit the record of said matter, and the evidence taken by them therein, together with a certified statement of the facts in-

volved in the case, and their decision thereon; (2) of the testimony and exhibits introduced in this court before the special referee in San Francisco.

Without entering into a minute consideration as to the effect and sufficiency of the evidence taken before the board of general appraisers at New York, it is sufficient to say that it is completely overcome by the evidence taken in this court, before the referee. Eight witnesses were called by the protestants in New York. Several of them professed to have more or less knowledge concerning Zante currants, but none of them appeared to be experts. They certainly were not expert viticulturists or horticulturists; nor, so far as their testimony shows, had any of them made a special study of the Zante currant, or of currants in general. Several of them admitted that they were not experts, and knew but little about Zante currants. Such knowledge as they did possess appears to have been acquired in the course of dealing in dried fruits, and by reason of importations made of currants; and, while sufficient for the ordinary purposes of trade, it cannot be said to be sufficiently competent to be accepted as binding expert testimony. Four of the witnesses identified a sample of the importation as being, not a Zante currant, but a Patras currant from the mainland. Four other witnesses testified that the expression "Zante currants" was understood to mean currants from the Island of Zante alone, and not from the mainland. All these witnesses were subjected to little, if any, cross-examination. One witness, in the course of his examination, stated that a Zante or Patras currant was a fruit other than a grape. This was clearly an error, and is completely and conclusively overcome and refuted by the unanimous testimony of all the witnesses, both for the government and for the importers, who testified in this court before the referee. The testimony taken before the referee is in marked contrast to that given before the board at New York. Most of the witnesses on the part of the government, some 23 in number, were experts, in every sense of the word, and proved themselves thoroughly conversant with the Zante currant, not only botanically, but commercially as well. Among them were professors of viticulture and horticulture at the State and Stanford Universities, several experienced vineyardists and growers of raisins, and also dealers and importers of the Zante currant on this coast. Some of them testified that they had made experiments in the growing of Zante currants in this state. They were subjected to a rigid cross-examination. The protestants produced but three witnesses, one of whom was the importer, and all of whom displayed a conspicuous want of knowledge upon the subject. Such opinions cannot stand, as against the positive statements of the experts in the case, who have made the question one of actual study, observation, and experiment. It would prolong this opinion to an unwarrantable length to rehearse the testimony given. It preponderates largely to the effect that the term "Zante currants" is a well-known commercial expression among importers, dealers, and growers of raisins, and relates to and comprehends a kind of raisin made from a small, seedless grape grown not only on the Island of Zante, but also, and to a much greater extent,

on the mainland of Greece, and other neighboring localities. "Zante currants" is simply its English name. It derives the name of "currants" from the fact that in times past it was shipped from the city of Corinth, Greece. In German it is called "Korinthen"; in French, "raisin de Corinthe"; in Spanish, "pasas de Corinto." It is a raisin grape, as distinguished from the shrub currant, with which its name may be confounded, but from which it is entirely distinct; the former belonging to the grapevine family, or vitis vinifera, of plants, the latter to the shrub, or ribes. A Zante currant, on the vine, is a small-sized grape. When picked and dried, it is a "dried grape," or kind of raisin, whose popular and commercial designation is "Zante currants." In the Century Dictionary, "currant" is defined as "A very small kind of raisin or dried grape imported from the Levant, chiefly from Zante and Cephalonia, and used in cooking." Precisely the same definition is given in Webster's International Dictionary, issue of 1890. In the Encyclopedia Britannica (Ed. 1877) the following definition is found: "Currant. The dried, seedless fruit of a variety of the grapevine, vitis vinifera, cultivated principally in Zante, Cephalonia, Ithaca, and near Patras, in the Morea." In the Standard Dictionary of the English language, published in 1895, a "currant" is defined to be "a small, seedless raisin imported from the Levant, and called usually 'dried currants' and 'Zante currant.'" While it is true that dictionaries are not, of themselves, evidence, still they may be referred to "as aids to the memory and understanding of the court." Nix v. Hedden, 149 U. S. 304, 307, 13 Sup. Ct. 881, and cases there cited. It may be interesting, in this connection, to refer briefly to the testimony of Dr. Gustav Eisen, curator of the Academy of Sciences, of San Francisco, an acknowledged authority on viticulture and horticulture, who testified that he had made the Zante currant one of the objects of his researches and studies. He gave the following account of the history of that grape or vine:

"The first time we hear of the Zante currant is about the year 1333, when we know, from some manuscripts and other publications in England, that there was considerable trade carried on between the Venetians and the English in Northern Europe, generally, in a fruit that was known as the 'raisin of Corinth.' That fruit trade in 'Corinth' or 'Corinths,' as they are known in several European languages to-day, was carried on for several hundred years, until the time when the Turks conquered Greece. Then it was to their interest to prevent the foreign traders from entering the gulf of Corinth. That was some time in the sixteenth century. * * * In other words, the Zante currant was originally only grown on the mainland of Greece, and shipped from the town of Corinth. The principal growth was along the Gulf of Corinth. After the Turks conquered Greece the trade in currants died out completely. Then the currant was, later on, introduced to the Island of Zante, in about the middle of the sixteenth century,—1550 or 1560, or thereabouts,—* * * in order to create a new industry for the islands. Since that time the currants have been known generally as 'Zante currants,' regardless of their place of growth. For a long time afterwards there were no currants grown at all, or at least there were no currants shipped from the mainland of Greece. That is of much later date, when the currant was again reintroduced from Zante to the mainland of Greece. But during the last few years, the trade and cultivation of the currants have increased enormously on the mainland of Greece, and to such an extent that now the proportion of currants from the mainland is a great many times more than that from the

island. While the island produces about eight thousand tons, the mainland of Greece produces one hundred and forty thousand or one hundred and fifty thousand tons of Zante currants."

E. W. Hilgard, professor of agriculture at the State University, testified that a Zante currant was—

"A raisin made from a small grape which grows in the Ionian Isles, and also in the Archipelago there; also, on the mainland of Asia Minor. They are dried and prepared in various ways, and shipped to the whole world. It is the only region that, so far, has produced this grape to perfection."

Without going further into the evidence, it is enough to say that, as a whole, the following four propositions of fact were, to my mind, conclusively established: (1) That the currants comprising the importation in question, of which Exhibit 1 is a sample, are Zante currants; (2) that Zante currants are a kind of raisins; (3) that Zante currants are grapes dried; and (4) that Zante currants are not the product exclusively of the Island of Zante, but they are produced also on the mainland of Greece, in the Archipelago, and other places, and in much larger quantities than on the island. Being Zante currants, they come within the language of paragraph 217, as above set forth, and are subject to the duty of $1\frac{1}{2}$ cents per pound therein prescribed.

But counsel for the importers claims that the use of the word "Zante" indicates that congress meant to limit the imposition of the duty to currants produced only in the Island of Zante, and that as the importation involved in this case came originally from Patras, in Greece, on the mainland, and is a product of the provinces of Greece, therefore it is not subject to the duty imposed by paragraph 217; but, on the contrary, it is entitled to free entry under paragraph 489, which exempts from duty "fruits, green, ripe, or dried, not especially provided for in this act." In interpreting a name or expression applied to articles upon which duties of importation are laid, it is well settled that congress uses such terms in their ordinary commercial sense, rather than in their distinctive or technical sense. As was said in Andrews' Rev. Laws, p. 181:

"It may be asserted, as a general principle, that tariff laws are to be construed according to the commercial meaning of the terms used in them. They are written in the language of commerce, rather than the language of science; and, if resort was not had to the terms and usages of commerce for their interpretation, they would operate with injustice to the importer, and involve the revenue officers in constant controversy."

See, also, to the same effect, the following authorities: Lee v. Lincoln, 1 Story, 610, Fed. Cas. No. 8,195; Two Hundred Chests of Tea, 9 Wheat. 430; Barlow v. U. S., 7 Pet. 404; U. S. v. 112 Casks of Sugar, 8 Pet. 277; Elliott v. Swartout, 10 Pet. 137; Curtis v. Martin, 3 How. 106; Tyng v. Grinnell, 92 U. S. 467; Arthur v. Morrison, 96 U. S. 108; Swan v. Arthur, 103 U. S. 597; Schmieder v. Barney, 113 U. S. 645, 5 Sup. Ct. 624; Drew v. Grinnell, 115 U. S. 477, 6 Sup. Ct. 117; Hartranft v. Wiegmann, 121 U. S. 609, 7 Sup. Ct. 1240; Arthur v. Butterfield, 125 U. S. 70, 8 Sup. Ct. 714; Robertson v. Salomon, 130 U. S. 412, 9 Sup. Ct. 559; Twine Co. v. Worthington, 141 U. S. 468, 12 Sup. Ct. 55; Earnshaw v. Cadwalader, 145 U. S. 247, 12 Sup. Ct. 851; Nix v. Hedden, 149 U. S. 304, 13 Sup. Ct.

881.   In Tyng v. Grinnell, supra, it was said by Mr. Justice Clifford that:

"Tariff laws are passed to raise revenue, and, for that purpose, substances are classed according to the general usage and known denominations of trade. Whether a particular article is designated by one name or another in the country of its origin, or whether it is a simple or mixed substance, is a matter of very little importance in the adjustment of our revenue laws, as those who frame such laws are chiefly governed by the appellations which the articles bear in our own markets, and in our domestic and foreign trade. Two Hundred Chests of Tea, 9 Wheat. 438. Laws regulating the payment of duties are for practical application to commercial operations, and are to be understood in a commercial sense; and this court, sixty years ago, decided that congress intended that they should be so administered and understood. U. S. v. 112 Casks of Sugar, 8 Pet. 279. Such laws, say this court, are intended for practical use and application by men engaged in commerce; and hence it has become a settled rule, in the interpretation of statutes of the description, to construe the language adopted by the legislature, and particularly in the denomination of articles, according to the commercial understanding of the terms used. Elliott v. Swartout, 10 Pet. 151. Congress must be understood, says Taney, C. J., as describing the article upon which the duty is imposed according to the commercial understanding of the terms used in the law in our own markets; and the court held in that case that congress, in imposing the duty, must be considered as describing the article according to the commercial understanding of the terms used in the act of congress when the law was passed imposing the duty. Curtis v. Martin, 3 How. 109. Suffice it to say, without multiplying authorities, that the rule of law is settled that the question whether an imported article is or is not known in commerce by the word or terms used in the act imposing the duty is a question of fact for the jury, and not a question of construction; and of course it must, in a case like the present, be determined by the court as a question of fact, the issues of fact, as well as of law, being submitted to the court. Lawrence v. Allen, 7 How. 797."

In Twine Co. v. Worthington, 141 U. S. 468, 471, 12 Sup. Ct. 55, this principle was thus briefly and succinctly summed up:

"It is a cardinal rule of this court that, in fixing the classification of goods for the payment of duties, the name or designation of the goods is to be understood in its known commercial sense, and that their denomination in the market when the law was passed will control their classification, without regard to their scientific designation, the material of which they may be made, or the use to which they may be applied."

The word "commercial," in this connection, is to be understood in its comprehensive sense of buying, selling, and exchange in the general sales or traffic of our own markets.   18 Op. Attys. Gen. 530, 532; Earnshaw v. Cadwalader, 145 U. S. 247, 258, 12 Sup. Ct. 851. It is also a rule in the interpretation of revenue laws that:

"Where congress has designated an article by a specific name, and imposed a duty upon it, general terms in the same act, though sufficiently broad to comprehend such article, are not applicable to it; in other words, the article will be classified by its specific designation, rather than under a general description." Homer v. Collector, 1 Wall. 486; Arthur v. Lahey, 96 U. S. 112; Arthur v. Stephani, Id. 125; Movius v. Arthur, 95 U. S. 144; Twine Co. v. Worthington, 141 U. S. 468, 474, 12 Sup. Ct. 55.

Applying these rules of interpretation to the facts of the case at bar, and it is obvious that the term "Zante currants," used in paragraph 217 of the Wilson act, was employed in its commercial sense, as understood in this country, and applies to all currants of that name or kind, wherever produced in foreign countries, and that it

has no reference, technically, to currants coming alone from the Island of Zante. No restrictions or exceptions as to places are either expressly or impliedly made. The mere fact that the currants comprising the importation in this case bear the name of "Zante," an island in the Archipelago, is of itself devoid of particular significance as indicating that congress meant to tax currants which come only from the Island of Zante. The tariff act, in the enacting clause, applies to "all articles imported from foreign countries." As a matter of fact, the evidence tended to show that much larger quantities of Zante currants, so called, are grown and exported from the provinces of Greece than from the Island of Zante, and that those grown on the mainland are still known, commercially, in this country, as "Zante currants." In other words, "Zante currants" is the commercial name for this variety of grape, when dried into raisins. It would be unreasonable to·suppose that congress, in imposing duties on Zante currants in the general language employed, intended to tax those coming from the Island of Zante alone, and not those which come, in much larger quantities, from other localities. Such an interpretation would result in an unfair and unwarranted discrimination between foreign places of produce, which, in the absence of clear and unambiguous words to the contrary, should not be imputed to congress. It is but fair to assume that, had it intended to limit the imposition of import duties on Zante currants grown and exported from that island only, it would have so stated in clear and plain language.

Counsel for the importers claims, however, that the fact that the statute has the capital letter "Z" in the word "Zante" indicates that congress intended that currants from that island alone should be taxed. This argument is without merit. The use of the capital "Z" is of no significance as indicating such an intent as claimed. The observance of grammatical propriety would require the use of the capital. It is a proper name, and it is a well-settled rule of grammatical construction that proper names, used as adjective elements, such as the word "Zante" in the phrase "Zante currants," should retain the capital letter. While it is true that the article in this case derives its name, etymologically, from the Island of Zante, yet, according to the greater weight of the evidence, the term "Zante currants," understood commercially in this country, applies to that article, wherever produced,—whether it be on the Island of Zante, or on the mainland in the provinces of Greece, or elsewhere.

It is further claimed by counsel for the importers that in view of the fact that congress dropped the expression "or other," contained in the provision in the tariff law of 1883 (Morrison act), paragraph 293 thereof, which imposed a duty of one cent per pound on "currants, Zante or other," and also in the provision in the tariff law of 1890 (McKinley act), paragraph 578 thereof, which declared "currants, Zante or other," free of duty, indicates that, in referring to Zante currants in paragraph 217 of the present law, it had reference exclusively to currants grown on the Island of Zante. This was the view which seems to have been taken by the board of appraisers. The opinion of the board contains this language:

"In the tariffs named, 'or other' followed 'Zante.' The omission of these words, the use of the word 'including,' and the specific enumeration of Zante currants in paragraph 217, would indicate that congress excluded from the operation of the paragraph all but Zante currants. If it was the intention to make all currants dutiable, it was very simple to say, 'all other dried grapes including currants,' and not, as it reads, 'including Zante currants.'"

The board found that:

"(1) The goods were not Zante currants; (2) they are not commercially known as raisins or dried grapes."

The appraisers were influenced largely, no doubt, in their conclusions, by the evidence introduced before them tending to show that this importation came originally from Patras, Greece, and that the term "Zante" referred exclusively to currants produced on the Island of Zante. But, as stated above, this evidence was met and completely overcome by the testimony of the experts and other witnesses in this court, who had had superior opportunities for study, observation, and experiment, and were therefore in a much better position to become familiar with and know the Zante currant, and its commercial relation and designation. It is urged, in this connection, that the decision of the board of appraisers should not be reversed where there is a substantial conflict of the evidence. Several cases in support of this position are cited by counsel for the importers; among them, that of In re Bing, 66 Fed. 727. The court there held that it would not set aside the decision of the board, even if against the weight of the evidence, where the board had sufficient evidence to warrant its finding. But such a rule can have little, if any, application to a case like the present, where additional testimony of the highest character was taken, and where the ultimate question decisive of the controversy is as much one of law as of fact.

My opinion is that the classification of the article imported and involved in this case as "Zante currants," made by the collector of the port of San Francisco, is correct, and that it is therefore subject to the duty prescribed in paragraph 217, of $1\frac{1}{2}$ cents per pound. The opposite decision, reached by the board of general appraisers, is erroneous, and should be reversed, and it is so ordered.