In re WIELAND et al.

(Circuit Court, N. D. California. November 6, 1899.)

1. CUSTOMS DUTIES—CONSTRUCTION OF TERMS USED IN STATUTE.
    Where names of articles have a known commercial meaning, they are to be given such meaning in the construction of tariff statutes, rather than their technical or scientific meaning.

2. SAME—CLASSIFICATION—SARDINES.
    Sprats put up in oil in tin boxes of the size and style designated in paragraph 208 of the tariff act of 1894, and labeled "Sardines," are dutiable under such paragraph as sardines, and not under paragraph 211 as fish in cans, not otherwise provided for; the smaller fish of different species, when so packed, being commercially known and commonly sold by the general name of "sardines."

F. J. Castelhun, for petitioners.

Edward J. Banning, Asst. U. S. Atty. (Frank L. Coombs, U. S. Atty., of counsel), for Board of Appraisers.

MORROW, Circuit Judge. This is an appeal from a decision of the board of United States general appraisers at New York. On June 14, 1898, Wieland Bros., of the city and county of San Francisco, filed their petition and application for a review of the questions of law and fact involved in the decision of the board of general appraisers in the matter of the classification of certain importations of fish. This petition alleges that on May 29, 1897, the petitioners imported, per vessel from Bordeaux, France, to New York, and per railroad from New York to the port of San Francisco, certain merchandise, namely, three lots of sprats in oil; that the first lot consisted of 650 cases, each case containing 100 quarter tins, the market value of the lot being $2,681.49; that the second lot consisted of 100 cases, each case containing 100 quarter tins,

the market value of the lot being $412.54; that the third lot consisted of 249 cases, each case containing 100 quarter tins, the market value of which lot was $981.57; that upon the entry of said merchandise the collector of the port of San Francisco classified it as "sardines," under paragraph 208 of the act of congress of August 27, 1894, entitled "An act to reduce taxation, to provide revenue for the government, and for other purposes," whereas he should have classified it as "fish in cans, not otherwise enumerated or provided for," under paragraph 211 of the said act of congress; that on August 12, 1897, the entries were liquidated by the collector, upon the classification made by him, at the rate of 2½ cents per quarter tin, the duty amounting to $1,625 for the first lot, $250 for the second lot, and $622.50 for the third, which, together with all charges, was paid to the collector on that day; that on August 14, 1897, petitioners gave notice of their dissatisfaction with this classification, and protested against the classification and liquidation of the entries by the collector, their notice specifying, as the reasons and grounds of their objections, "that the above goods are 'sprats,' and not 'sardines.' The sprats or bristlings are the young of the herring, a family distinct from that to which the sardines belong. They are bought and sold as 'sprats,' and we claim that they are liable to a duty of twenty per cent. ad valorem, as 'fish in cans,' n. o. p., under paragraph 211, Act Aug. 27, 1894." It is further alleged that the board of United States general appraisers at New York duly made its decision on May 26, 1898, which decision was in favor of the classification made by the collector of customs at San Francisco, and overruling petitioners' protest and objections. Petitioners, being dissatisfied with the decision of the collector of customs and the board of United States general appraisers as to the construction of the law and the facts respecting the classification of said merchandise, and the duty imposed under such classification, have appealed to this court, and ask for a judgment for the difference between the amount paid to the collector upon said merchandise and the amount payable under paragraph 211 of said act of August 27, 1894, amounting to the sum of $1,-682.30 and costs.

The three lots of merchandise involved in this petition are invoiced, respectively, No. 6,247, consisting of 65,000 quarter tins, valued at $2,681.49; No. 6,248, consisting of 10,000 quarter tins, valued at $412.54; and No. 6,249, consisting of 24,900 quarter tins, valued at $981.57. The tins included under the invoices Nos. 6,247 and 6,248 bear the brand of "Loqueran & Cie."; those under invoice No. 6,249, that of "Le Keriolec & Cie." The tins bearing the brand of Loqueran & Cie. are labeled at one end "Poissons á l'Huile," and on one side "Fabricants de Sardines á l'Huile." Those bearing the name of Le Keriolec & Cie. are labeled at one end "Poissons Choisis," and on one side "Sardines á l'Huile." It is admitted that the goods are sprats in oil packed in tins.

The act of August 27, 1894, entitled "An act to reduce taxation, to provide revenue for the government, and for other purposes," provides as follows (28 Stat. 523):

"Fish.

"208. Anchovies and sardines packed in oil or otherwise, in tin boxes, measuring not more than five inches long, four inches wide, and three and one-half inches deep, ten cents per whole box; in half boxes, measuring not more than five inches long, four inches wide, and one and five-eighths inches deep, five cents each; in quarter-boxes measuring not more than four and three-fourths inches long, three and one-half inches wide, and one and one-fourth inches deep, two and one-half cents each. When imported in any other form, forty per centum ad valorem.

"209. Fish, smoked, dried, salted, pickled, or otherwise prepared for preservation, three-fourths of one cent per pound.

"210. Herrings, pickled, frozen, or salted, and salt-water fish frozen or packed in ice, one-half of one cent per pound.

"211. Fish in cans or packages made of tin or other material, except anchovies and sardines, and fish packed in any other manner, not specially enumerated or provided for in this act, twenty per centum ad valorem."

## The act of March 3, 1883 (22 Stat. 503), provides:

"Anchovies and sardines packed in oil or otherwise, in tin boxes measuring not more than five inches long, four inches wide, and three and one-half inches deep, ten cents per whole box; in half boxes measuring not more than five inches long, four inches wide, and one and five-eighths deep, five cents each; in quarter-boxes measuring not more than four inches and three-quarters long, three and one-half inches wide, and one and a quarter deep, two and one-half cents each; when imported in any other form, forty per centum ad valorem. Fish preserved in oil, except anchovies and sardines, thirty per centum ad valorem."

## The act of October 1, 1890 (26 Stat. 586), provided:

"Fish.

"291. Anchovies and sardines packed in oil or otherwise, in tin boxes measuring not more than five inches long, four inches wide, and three and one-half inches deep, ten cents per whole box; in half boxes measuring not more than five inches long, four inches wide, and one and five-eighths inches deep, five cents each; in quarter-boxes measuring not more than four and three-fourths inches long, three and one-half inches wide, and one and one-fourth inches deep, two and one-half cents each; when imported in any other form, forty per centum ad valorem."

"295. Fish in cans or packages, made of tin or other material, except anchovies and sardines, and fish packed in any other manner not specially enumerated or provided for in this act, thirty per centum ad valorem."

In the foregoing statutes, including that of August 27, 1894, anchovies and sardines packed in tins are subjected to a specific duty per tin, half tin, and quarter tin, while "fish in cans or packages made of tin or other material, except anchovies and sardines," are subjected to an ad valorem duty. Sprats and sardines belong to the same family of the clupeidæ. The smaller fish of this family are prepared and canned in oil, and are placed upon the market under the general name of "sardines." The sardine is a more expensive fish than the sprat, and sprats sold as sardines are sold as sardines of inferior quality, but "sardines" appears to be the general term covering clupeidæ, both sardines proper and the commoner varieties, when put up in oil in tins. The sprats in oil, in this case, are labeled in two different ways. The label under the brand of Keriolec & Cie., invoice No. 6,249, is "Sardines in Oil"; that under the brand of Loqueran & Cie., invoices Nos. 6,247 and 6,248, is not so expressed, but on one side of the tin is written

"Manufacturers of Sardines in Oil," "Sardines á l'Huile" being printed in conspicuous type. The fish in the consignments in question went under the general name of "sardines." The weight of the evidence leads to the conclusion that persons buying any of the tins of fish involved would buy them as sardines, and that, in response to a demand for cheap sardines, any of these tins would be handed to a customer. The witness Ring, a retail grocer of 13 years' experience, testified that he is familiar with the brands represented by invoices 6,247 and 6,248, and has sold them as sardines; that they are known to the retail trade as sardines; and that he buys them as sardines. There is much testimony to the same effect. There appears to be no doubt that the goods are generally known as sardines, and are retailed to the public as such.

The United States general appraisers, in their opinion, cite the case of Meyer v. U. S. (C. C.) 86 Fed. 120. This case comprised two varieties of fish packed in oil, and labeled, respectively, "Kieler Sprotten in Oil," and "Sardelles de Scandinavie." It was held that the sardelles were not commercially know or dealt in either as anchovies or sardines, but with respect to the "Kieler sprats" the court said:

"The other fish are Kieler sprats. They are probably neither genuine sardines nor anchovies. This point, however, is not material. The evidence shows that, when pickled and packed in half barrels, they are commercially known as 'Norwegian Anchovies.' If put up in tins and labeled 'Sardines,' they are commercially known as 'smoked sardines'; and if labeled 'Sprats,' they are commercially known as 'sprats.' The evidence before the board sufficiently supports the finding that these fish are commercially known as 'smoked sardines in oil.' The whole evidence tends to show that little fish of this general character, when thus put up in oil in tin boxes, are commercially recognized as belonging to the general class 'sardines,' although the particular species, when labeled 'Sprats,' are known as 'Kieler sprats.' The facts bring the case within the rule as enunciated in Re Herrman (C. C.) 52 Fed. 941."

The rule here referred to is that laid down by Judge Lacombe in his opinion in that case. The learned judge says:

"And it further appears quite plainly from their opinion [the opinion of the board of general appraisers] that to their conclusions they were influenced by a mistaken belief or understanding as to the rules of law, as laid down by the supreme court; that is, they seem to consider that these terms in tariff acts may be interpreted according to the technical understanding of them by manufacturers. Now, I know of no such rule. Some words are to be taken in their popular and ordinary signification, as they would be understood by all the world. Failing that, there is the well-known rule, reiterated over and over again, that, if words have a special meaning in trade and commerce, they are to be given that special meaning when we find them in tariff statutes. I know of no third rule that, because congress frames its statutes after advising with manufacturing experts, words should in some instances be given the technical meaning which the manufacturers give to them."

In interpreting a name or expression applied to articles upon which duties of importation are laid, it is well settled that congress uses such terms in their ordinary commercial sense, rather than in their distinctive or technical sense. As was said in And. Rev. Law p. 181:

"It may be asserted, as a general principle, that tariff laws are to be construed according to the commercial meaning of the terms used in them. They

are written in the language of commerce, rather than the language of science; and, if resort was not had to the terms and usages of commerce for their interpretation, they would operate with injustice to the importer, and involve the revenue officers in constant controversy."

In Twine Co. v. Worthington, 141 U. S. 468, 471, 12 Sup. Ct. 56, this principle was thus briefly and succinctly summed up:

"It is a cardinal rule of this court that, in fixing the classification of goods for the payment of duties, the name or designation of the goods is to be understood in its known commercial sense, and that their denomination in the market when the law is passed will control their classification, without regard to their scientific designation, the material of which they may be made, or the use to which they may be applied."

This rule can properly be applied in this case. There has been no evidence to show that a tin labeled "Sardines" is commercially known otherwise than as "sardines," and the word "sardines" must be taken in its ordinary signification; for nothing in this case has shown that any special meaning is attached to the expression, in trade and commerce, which would compel the court to construe it to mean something other than the term itself conveys to people in general. Petitioners' application and petition will therefore be denied.