## HILLS BROS. CO. v. UNITED STATES.

(Circuit Court of Appeals, Second Circuit. January 5, 1900.)

### No. 80.

CUSTOMS DUTIES—CLASSIFICATION—DRIED CURRANTS.

"Dried currants," so called, from the Levantine, which are known to the trade by some 30 different names, indicating the islands or localities where grown, and which, although in fact raisins, made from a small grape, constitute the only currants known commercially or imported, are, except those grown on the island of Zante, entitled to free entry, under paragraph 489 of the free list of the tariff act of 1894, as "fruits, * * * dried, not specially provided for," and are not dutiable under paragraph 217, which covers "plums, prunes, figs, raisins and other dried grapes, including Zante currants."

Appeal from the Circuit Court of the United States for the Southern District of New York.

This is an appeal from a decision of the circuit court, Southern district of New York, which affirmed a decision of the board of general appraisers, affirming a decision of the collector of the port of New York touching an importation of dried currants.

A. P. Ketchum, for appellant.

Henry C. Platt, for the United States.

Before WALLACE, LACOMBE, and SHIPMAN, Circuit Judges.

LACOMBE, Circuit Judge. The importation was under the tariff act of 1894, the relevant paragraphs being:

"Par. 217. Plums, prunes, figs, raisins and other dried grapes, including Zante currants, one and one-half cents per pound."

"Par. 489 [of the free list]. Fruits, green, ripe or dried, not specially provided for in this act."

It has been stipulated, and apparently has never been disputed, that the currants in question were not the growth of the island of Zante. The question here presented first arose upon an importation of Austin, Nichols & Co. into the port of New York, and the board held that such currants were not within paragraph 217. In this decision the treasury department for some time acquiesced. Subsequently, a similar question arising in California, the board, upon the evidence in the Austin-Nichols Case and upon further proofs, reaffirmed its former decision. Appeal was taken to the circuit court, Northern district of California, additional testimony was taken in that court, and the decision of the board was reversed. In re Wise (C. C.) 73 Fed. 183. In the case at bar still further testimony was taken, but the board, referring to the Wise decision, held as follows: "In deference to a superior tribunal, we follow the said judicial ruling, and affirm the decision of the collector." This decision does not present a finding of fact by the board upon conflicting testimony of such a character that the reviewing court should hesitate to express a different conclusion, if, upon the whole record, such court were satisfied that the weight of testimony did not support such enforced finding. The circuit court, as a matter of comity, followed the decision in the Northern district of California, without discussing the merits of the case.

In the record now before this court we have—First, all the testimony which was before the California court, both that returned by the board and that taken in the court; and, second, some additional testimony which has been taken in the case at bar. The record is most voluminous, and a great deal of the testimony wholly immaterial and unnecessary to the decision. It will not be necessary to go at length into any discussion of the testimony. In the California case the inquiry seems to have been more particularly directed to the scientific and historical side of the case. Of the 23 witnesses examined in court (leaving out the importer and his two witnesses, Falkinham and Elliot), only four were sufficiently qualified to speak as experts touching the commercial meaning of the phrase "Zante currants"; the other dealers were shown to have no experience in trade and commerce at wholesale with imported dried currants. And of the four it appeared that the experience of nearly all was most limited.

The trade witnesses called here on behalf of the importers, however, had acquired their knowledge of trade terms by long years of dealing in this very commodity—dried currants—in large quantities in the markets of this country. If it were necessary to determine the commercial meaning of the words in controversy, the record before this court would seem to present an exposition of commercial dealings at and prior to the passage of the act of 1894 much more complete and satisfactory than that upon which the court in California undertook to pass. But it will not be necessary to inquire whether there is any commercial meaning of the term "Zante currants" which will include currants not in fact of Zante. The language which congress has employed, when read in the light of the facts in proof, is most clear and unambiguous.

Referring to the history and scientific classification of the dried imported currant of commerce, the court in California says it is "a kind of raisin made from a small, seedless grape, grown not only on the island of Zante, but also, and to a much greater extent, on the mainland of Greece and other neighboring localities. It derives the name of 'currants' from the fact that in times past it was shipped from the city of Corinth, Greece. In German it is called 'Korinthen'; in French, 'raisin de Corinthe'; in Spanish, 'pasas de Corintho.' It is a raisin grape, as distinguished from a shrub currant, with which its name may be confounded, but from which it is entirely distinct,—the former belonging to the grapevine family, or vitis vinifera, of plants; the latter to the shrub, or ribes. * * * On the vine it is a small-sized grape. When picked and dried, it is a dried grape, or kind of raisin." And the court quotes the testimony of Prof. Hilgard, of the state university (California), as follows: "[It is] a raisin made from a small grape which grows in the Ionian Isles, and also in the archipelago there; also on the mainland of Asia Minor. [And the witness subsequently added, "on the mainland of Greece."] They are dried and prepared in various ways, and shipped to the whole world. It is the only region that, so far, has produced this grape to perfection."

The conclusions of the California court, that these dried fruits "are a kind of raisins," and "are grapes dried," are abundantly supported by the record. Scientifically and botanically they are "raisins or other dried grapes," but popularly and commercially they are not known or classified as such. The testimony of the qualified experts, —not the botanists, but the trade experts,—who testified in California and before the board of appraisers, is overwhelming to the effect that in trade and commerce in this country, at and prior to 1894 (and, indeed, at all times), these dried currants have never been known or classed as raisins or as dried grapes, which are different and well-known articles of commerce. Now, it is manifest that congress fully understood this situation, and legislated upon the understanding that these so-called "currants" would not become dutiable as a part of the family of raisins or dried grapes unless they were specifically referred to, and therefore congress used the phrase, "raisins and other dried grapes, including Zante currants." If the contention of the government were sound, the words, "including Zante currants," would

be entirely superfluous. But we must assume that congress was satisfied to the contrary, and certainly the testimony now before the court shows quite clearly that the congressional understanding as to trade classification and nomenclature was correct.

It appears, moreover, that congress has known for a long time that there were to be expected among the importations, which its successive tariff acts would cover, not only "Zante currants," but also "other currants." Thus, the Revised Statutes imposed a duty of one cent a pound on "currants, Zante or other" (Schedule M); and the act of 1883 imposed a like duty, by paragraph 293, on "currants, Zante or other." The act of 1890 put all currants on the free list by the use of the same phrase in paragraph 578, "currants, Zante or other"; and the same words are found when all currants are, in the act of 1897, again made dutiable, the paragraph reading:

"Par. 264. Figs, plums, prunes and prunelles, two cents per pound; raisins and other dried grapes, two and one-half cents per pound; dates, one-half of one cent per pound; currants, Zante or other, two cents per pound."

Incidentally, it may be noted that this paragraph accentuates the fact that congress distinguishes between dried grapes and these so-called "currants" from the Levant, for it imposes different rates of duty upon them.

What, then, are currants "other than Zante"? The record shows that the only dried foreign currants known to trade and commerce (and paragraph 217 of the act of 1894 manifestly deals with dried fruits) are the fruits of the peculiar variety of the vitis vinifera already described, which reaches perfection only in the islands of the Grecian archipelago, and on the neighboring mainland of Greece and Asia Minor. The fruit of the shrub currant is not known in this form. Many names are given to these currants which we may comprehensively call "Levantine." Vostizza, Calamata, Patras, Amalia, Ithaca, Pyrgos, Provincial, Gulph, Cephalonia, are samples of the 30 or more names by which they are described in trade circulars, and under which wholesale dealers in the article are accustomed to order them. These different names, it is apparent, are mainly indicative of the place from which the fruit comes, and the evidence shows that the differences are more than nominal. It is testified that the fruit grown in different localities possesses different characteristics, and some of the witnesses before the board picked out samples which they identified as Vostizza, Zante, Provincial, etc., and pointed out the differences between the fruit. Inasmuch as congress has recognized the existence in trade and commerce of currants other than Zante, we must assume, in view of testimony that discloses the existence of these Vostizza, Calamata, Provincial, and other Levantine currants, and denies the existence of any other dried currants than the Levantine, that congress, when it used the phrase "currants, Zante or other," meant to differentiate the Zante currant from the Vostizza, the Calamata, the Provincial, and the other varieties of Levantine currants. That congress did make just this distinction in the Revised Statutes, and in 1883, 1890, and 1897, is proved by its continued use of the phrase, "currants, Zante or other." And there is no evidence at all which would indicate that, when that body passed the act of 1894, it had

any other or different understanding of the situation. In the acts of 1883 and 1890, the free list contained a comprehensive provision covering "fruits, green, ripe or dried, not specially provided for," which, of course, would include every kind of dried currants, unless it were elsewhere specified. In both of these acts congress withdrew from the operation of this free-list provision, not only Zante currants, but also all the other Levantine currants,—in 1883, by provisions in the duty schedules for "currants, Zante or other"; and in 1890, by a specific free-list provision for "currants, Zante or other." When the act of 1894 was framed, the same free-list provision remained, but congress withdrew from it, not "currants, Zante or other," but only "Zante currants"; the phraseology of paragraph 217 being "plums, * * * raisins and other dried grapes, including Zante currants, one and one-half cents per pound." The conclusion seems irresistible that the "other currants," whose existence as something different from Zante currants congress had recognized for 20 years, remained within the provisions of the free list, since they were not withdrawn therefrom by the form of words congress had always used before when imposing duty upon them, and which form of words it used three years later, when it again laid duty on "currants, Zante or other." Act 1897, par. 264. When, therefore, we find that the only "other currants" known to commerce are these Levantine currants, not of Zante, it must be inferred that congress did not intend, nor did it use language appropriate, to sweep them out of the comprehensive provision of the free-list paragraph covering fruits, green, ripe, or dried. Since it is undisputed that the currants now under consideration are not the growth of the island of Zante, but are Amalias and Provincials, and within the class known to congress as "other currants," they were entitled to free entry, under the tariff act of 1894. The decision of the circuit court is reversed.