WIELAND et al. v. COLLECTOR OF PORT OF SAN FRANCISCO.

(Circuit Court of Appeals. Ninth Circuit. October 1, 1900.)

No. 591.

CUSTOMS DUTIES—CLASSIFICATION—SARDINES.

Small fish packed in oil in quarter tins of the size and style designated in paragraph 208 of the tariff act of 1894 (28 Stat. 523), and so labeled as to be known to the trade generally as "sardines in oil," are dutiable as such under that paragraph, and not under paragraph 211 as fish in cans, not specially provided for, although they are not in fact sardines, but sprats, and are known among importers as "sprats in oil."

Appeal from the Circuit Court of the United States for the Northern District of California.

F. J. Castelhun (Lloyd & Wood, of counsel), for appellants.

Edward J. Banning, Asst. U. S. Atty. (Frank L. Coombs, U. S. Atty., of counsel), for appellee.

Before GILBERT and ROSS, Circuit Judges, and HAWLEY, District Judge.

HAWLEY, District Judge. This is an appeal from the judgment of the circuit court (98 Fed. 99) sustaining the decision of the board of United States general appraisers of New York in overruling the protest made by appellant against the liquidation, entry, assessment, and payment of duties exacted by the collector of the port of San Francisco at the rate of 2½ cents per quarter tin on imported sprats in oil, packed in tins, labeled "Sardines in Oil." The facts are: That on May 29, 1897, appellant imported from Bordeaux,

France, three lots of fish in oil to the port of San Francisco, under entries numbered 6,247, 6,248, and 6,249. That entry 6,247 consisted of 650 cases, each case containing 100 quarter tins labeled on one side "Fabricants de Sardines à L'huile"; the other, "Loquer & Cie., Douarnenez, France," and on one end "Poissons à L'huile." The market value of this lot was $2,681.49. That entry No. 6,248 consisted of 100 cases, each containing 100 quarter tins, labeled in all respects as entry No. 6,247. The market value of this lot was $412.54. That entry No. 6,249 consisted of 249 cases, each containing 100 quarter tins, labeled as follows: "Le Keriolec & Cie." on one side, "Sardines à L'huile" on the other; "Usine à Concarneau, France," on one end, and on the other end "Poissons Choisis." The market value of this lot was $981.57. Appellee admits that the specific definition of the fish in question is "sprats in oil"; but his contention is that the testimony in its entirety shows that sprats put up in oil, packed and labeled as those in question were, are known to the trade as "sardines in oil," and that such commercial designation must prevail.

The court, upon the testimony, found that:

"(5) The said fish in oil of all three entries were 'sprats in oil,' and were invoiced as 'sprats in oil.' (6) The said fish in oil were sprats, and belong to the same family of the clupeidæ as do sardines. The smaller fish of this family are prepared and canned in oil as are sardines, but the latter are superior to sprats, and sell for more. (7) The fish in the consignments in question went under the general name of 'sardines.'"

And upon these facts found as a matter of law that the imported merchandise was properly classified as sardines, and is subject to duty at the rate of 2½ cents per quarter tin, under paragraph 208 of the act of congress of August 27, 1894, entitled "An act to reduce taxation, to provide revenue for the government, and for other purposes" (28 Stat. 509), and that the decision of the board of United States general appraisers that such merchandise was subject to duty at such rate should be sustained.

Appellant claims that the evidence does not sustain the finding of the court that the fish in question went under the general name of "sardines"; that the court erred in deciding that the merchandise in question (especially invoices 6,248 and 6,249) was subject to duty at 2½ cents per quarter tin, under paragraph 208 of the tariff act of 1894 (28 Stat. 523); and its contention is that the merchandise in its entirety was only subject to a duty at the rate of 20 per cent. ad valorem, under paragraph 211 of the same act. These paragraphs read as follows:

"208.—Anchovies and sardines, packed in oil or otherwise, in tin boxes measuring not more than five inches long, four inches wide, and three and one-half inches deep, ten cents per whole box; in half boxes, measuring not more than five inches long, four inches wide, and one and five-eighths inches deep, five cents each; in quarter boxes, measuring not more than four and three-fourths inches long, three and one-half inches wide, and one and one-fourth inches deep, two and one-half cents each."

"211.—Fish in cans or packages made of tin or other material, except anchovies and sardines and fish packed in any other manner, not specially enumerated or provided for in this act, twenty per centum ad valorem."

We are of opinion that the findings of the court are sustained by the weight of the evidence, and that the conclusions of law arrived at are correct, and that the fish in the invoices should be "properly" designated for customs duties under the general name of sardines. It is true that appellant introduced several witnesses whose testimony tended to show that the fish in the cans were, among importers, commercially known as "sprats in oil," and that they were neither bought nor sold as "sardines." On the other hand, the testimony of retail dealers is equally positive that similar consignments of fish were bought and sold by and known to the retail trade as "sardines." Appellant claims, upon the authority of Lamb v. Robertson (C. C.) 38 Fed. 716, Reiss v. Magone (C. C.) 39 Fed. 105, 108, and Hills Co. v. U. S., 39 C. C. A. 500, 99 Fed. 264, that the testimony of importers and wholesale dealers must prevail over the testimony of retail dealers. But in the present case it appears that several of the witnesses who testified in behalf of the appellant that the fish contained in the cans were not sardines, but sprats in oil, admitted upon cross-examination that tins of fish marked and labeled as the tins in the present case were would be commercially known to the trade generally as "sardines in oil." The tariff laws are, as a general rule, written in the language of commerce, rather than in the language of science.

In Re Herrman (C. C.) 52 Fed. 941, 944, it is said:

"Some words are to be taken in their popular and ordinary signification, as they would be understood by all the world. Failing that, there is a well-known rule, reiterated over and over again, that, if words have a special meaning in trade and commerce, they are to be given that special meaning when we find them in tariff statutes. I know of no third rule that, because congress frames its statutes after advising with manufacturing experts, words should in some instances be given the technical meaning which the manufacturers give to them. * * * An article may be bought and sold by the specific name which indicates that precise article, and still a group of such articles may be known to trade and commerce by a commercial term, which includes them in a special group."

In Schmieder v. Barney, 113 U. S. 645, 647, 5 Sup. Ct. 624, 625, 28 L. Ed. 1130, 1131, the court said:

"Undoubtedly the language of tariff acts is to be construed according to its commercial signification, but it will always be understood to have the same meaning in commerce that it has in the community at large, unless the contrary is shown. Swan v. Arthur, 103 U. S. 597, 598, 26 L. Ed. 525."

In Twine Co. v. Worthington, 141 U. S. 468, 471, 12 Sup. Ct. 55, 56, 35 L. Ed. 821, 823, the court said:

"It is a cardinal rule of this court that in fixing the classification of goods for the payment of duties the name or designation of the goods is to be understood in its known commercial sense, and that their denomination in the market when the law was passed will control their classification without regard to their scientific designation, the material of which they may be made, or the use to which they may be applied. In re Two Hundred Chests of Tea, 9 Wheat. 430, 438, 6 L. Ed. 128; U. S. v. One Hundred and Twelve Casks of Sugar, 8 Pet. 277, 8 L. Ed. 944; Elliott v. Swartwout, 10 Pet. 137, 9 L. Ed. 373; Curtis v. Martin, 3 How. 106, 11 L. Ed. 516; Arthur v. Morrison, 96 U. S. 108, 24 L. Ed. 764; Swan v. Arthur, 103 U. S. 597, 26 L. Ed. 525; Schmieder v. Barney, 113 U. S. 645, 5 Sup. Ct. 624, 28 L. Ed. 1130; Arthur's Ex'rs

v. Butterfield, 125 U. S. 70, 8 Sup. Ct. 714, 31 L. Ed. 643; Robertson v. Salomon, 130 U. S. 412, 9 Sup. Ct. 559, 32 L. Ed. 995."

Numerous other authorities are cited upon this subject in a note to Dennison Mfg. Co. v. U. S., 18 C. C. A. 545 (s. c. 72 Fed. 258).

In Meyer v. U. S. (C. C.) 86 Fed. 120, the merchandise in question comprised two varieties of fish packed in oil, and labeled, respectively, "Kieler Sprotten in Oil," and "Sardelles de Scandinavie." They were classified for duty at $2\frac{1}{2}$ cents per box, under the provisions of paragraph 208 of the act of 1894, for "anchovies and sardines packed in oil in quarter boxes," and were claimed to be dutiable at 20 per cent. ad valorem, under the provisions of paragraph 211 of said act, as "fish in cases or packages made of tin, except anchovies and sardines." The court, after overruling the decision of the board of general appraisers as to the sardelles, said:

"The other fish are called 'Kieler sprats.' They are probably neither genuine sardines nor anchovies. This point, however, is not material. The evidence shows that, when pickled and packed in half barrels, they are commercially known as 'Norwegian anchovies'; if put up in tins, and labeled 'sardines,' they are commercially known as 'smoked sardines'; and, if labeled 'sprats,' they are commercially known as 'sprats.' The evidence before the board sufficiently supports the finding that these fish are commercially known as 'smoked sardines in oil.' The whole evidence tends to show that little fish of this general character, when thus put up in oil in tin boxes, are commercially recognized as belonging to the general class 'sardines,' although this particular species, when labeled 'sprats,' are known as 'Kieler sprats.' The facts bring the case within the rule enunciated in Re Herrman, 52 Fed. 941. The decision of the board of general appraisers affirming the act of the collector with reference to sprats is affirmed."

In the light of all the evidence, and of the principles of law as announced in the authorities we have cited, our conclusion is that the judgment of the circuit court is correct, and should be affirmed, with costs. It is so ordered.