## TAYLOR et al. v. TREAT.

(Circuit Court, S. D. New York. March 7, 1907.)

1. INTERNAL REVENUE—VERMUTH—WINE.

Vermuth is not "wine" within either the commercial or the popular meaning of that term, and therefore is not subject to the stamp tax on "sparkling or other wines," provided in War Revenue Act June 13, 1898, c. 448, 30 Stat. 463 [U. S. Comp. St. 1901, p. 1654].

[Ed. Note.—Interpretation of commercial and trade terms in tariff laws, see note to Dennison Mfg. Co. v. United States. 18 C. C. A. 545.]

2. SAME—ACTS—INTERPRETATION WITH REFERENCE TO TARIFF ACTS.

Internal revenue acts should be interpreted in harmony with the tariff legislation of the country.

3. SAME—TRADE-NAMES—FOREIGN NOMENCLATURE—EVIDENCE.

Evidence of foreign trade-names is not material to the question of the meaning of terms used in United States revenue acts.

4. SAME—JUDGMENT FOR ILLEGAL EXACTION—INTEREST—DEMAND.

Certain parties became entitled to a judgment against an internal revenue collector for the cost of stamps which he had illegally compelled them to use. Held that, inasmuch as they had purchased the revenue stamps in large quantities and evidently for other purposes than that of paying the unlawful tax, they were entitled to interest only from the date of their demand.

At Law. Action for the repayment of internal revenue taxes illegally imposed.

These proceedings were brought by William A. Taylor and Irving K. Taylor, as copartners doing business under the name of W. A. Taylor & Co., against Charles H. Treat, formerly a collector of internal revenue in the city of New York. The case was tried before the court without a jury.

Comstock & Washburn (Albert H. Washburn, of counsel), for plaintiffs.

D. Frank Lloyd, Asst. U. S. Atty., and Charles Duane Baker, for defendant.

HOUGH, District Judge. The war revenue act of 1898 (Act June 13, 1898, c. 448, 30 Stat. 463 [U. S. Comp. St. 1901, p. 1654]), provides for payment, by cancellation of internal revenue stamps, of a certain tax on "sparkling or other wines." Plaintiffs are importers of and dealers in Italian vermuth, and allege that, while the act above referred to was in force, the defendant, one of the collectors of internal revenue in New York City, compelled them to pay for and affix to bottles of

vermuth imported by their firm stamps to the value of $7,603.20, for which amount they bring this suit, alleging that vermuth is not, within the meaning of the statute in question, a "sparkling or other wine."

The testimony adduced here has related principally to the nature and commercial designation of vermuth; but a preliminary question is raised as to the sufficiency of plaintiffs' proof that stamps to the value sued for were really bought, affixed, and canceled at the cost of the plaintiffs. It is shown that stamps to a larger value than is the subject of this suit were purchased by the plaintiffs, were sent by them to the Italian vermuth manufacturers, and that plaintiffs' importations arrived here with canceled stamps affixed. The money claim in the complaint is arrived at by multiplying the number of bottles imported during the life of the act by the value of each stamp, with proper deductions for purchase of so large a quantity. In my opinion the direct proof of damage is sufficient; but all doubt is resolved by the action of the defendant himself, who certified the amount of the claim in suit to be correct when the usual application for refund was made to the commissioner of internal revenue prior to the institution of this action.

As to the composition and principal ingredients of vermuth, there can be no doubt, whether the French or Italian article be considered. The basis of manufacture is a white wine, frequently a blend or mixture of several wines of varying cost, to which is added sufficient alcohol to raise the spirituous proportion to about 15 per cent., and the mixture is completed by the addition of herbs, spices, and sugar in quantities and proportions depending on the manufacturer's taste and tradition—but always including some wormwood, from the German name for which plant the finished product takes its title—and both name and thing have been known in the countries of origin for more than 100 years. It is, I think, proven that while both here and abroad vermuth is commonly referred to by that name only, the complete title of the product is in Italy "vino vermouth," and in France "vin de vermouth"—names sufficiently recognizing its vinous nature. It is not shown to be native to any other countries. In consumption its appears to be used in Latin countries as a beverage in like manner as wines of similar strength, but in the United States it has not received wide recognition except as a component of the native "mixed drink." In American commercial usage, as evidenced by trade circulars and advertisements, it is never classed with wines, and if with any other drinkables, with cordials and liquors; but usually it figures alone, as though sui generis. The definitions found in dictionaries describe it as a "liqueur" (Standard) and "a sort of mild cordial" (Century). It cannot be both, and I derive from these definitions no other assistance than to note that it is not denominated a wine, nor do the definitions of wine in either dictionary allude to vermuth.

From the evidence of trade usage and nomenclature introduced, I find that there is no general trade consensus of opinion regarding this article. The plaintiffs' witnesses are sure that vermuth is not a wine, and not known or regarded as wine in the United States; but they are largely interested in the event of this suit. Those opposing them too frequently limit their statement that vermuth is a wine to their per-

sonal opinion to render it possible for me to believe that they are testifying to any general custom or uniform usage. But a considerable majority of all the witnesses agree that they buy and sell, advertise and drink, vermuth by that name alone. It is urged that this habit means no more than does the custom of alluding to sherry or port by those names without adding the word "wine"; but this argument does not meet the proven method (above alluded to) of advertising vermuth in circulars and newspapers. I therefore find that the fluid has no other trade name or fame except as vermuth simpliciter, and is in the minds of American dealers and consumers an article of its own class, having no more mental relation to wine than chartreuse has to brandy.

The defendant shows that, in a prosecution against one making counterfeit vermuth (without using any wine at all), the Italian courts sustained the application of a statute of that country relating (semble) to adulteration or imitation of "wine"; but this evidence, if otherwise admissible, cannot affect the issue here, any more than Italian usage as to nomenclature, if this case be regarded as one of "trade-names," for the "name abroad is of no materiality whatever." Lamb v. Robertson (C. C.) 38 Fed. 718.

Considering the question here involved as one of commercial designation only, the scale would be turned in favor of the plaintiffs by the doctrine repeated in Hartranft v. Wiegmann, 121 U. S. 616, 7 Sup. Ct. 1240, 30 L. Ed. 1012, for, if the question be one of doubt, the doubt would be resolved in favor of the importer, "as duties are never imposed on the citizen upon vague or doubtful interpretations." But in my opinion the plaintiffs are overwhelmingly entitled to judgment upon consideration of past tariff legislation on this subject. Vermuth first appeared as a dutiable article in Act July 14, 1870, 16 Stat. 263, c. 255, and it is there classified with "cordials, liqueurs, arrack, absinthe," etc., in phraseology almost exactly borrowed from a similar catalogue (omitting vermuth) in Act Aug. 30, 1842, 45 Stat. 560, c. 270. In Act June 6, 1872, 17 Stat. 233, c. 315, section 4 provides: "On vermuth the same duty as on wines of the same cost." Here for the first time vermuth is separated from cordials and liqueurs. In Act March 3, 1883, c. 121, § 1, Schedule H, par. 296, 22 Stat. 505 [U. S. Comp. St. 1901, p. 1654], there is provided on "vermuth the same duty as on still wines." In Act Oct. 1, 1890, c. 1244, § 1, Schedule H, 26 Stat. 589 [U. S. Comp. St. 1901, p. 1654], paragraph 336 lays a duty on "still wines including ginger wine or ginger cordial and vermouth in casks, 50 cents per gallon," and this phraseology was repeated in Act Aug. 27, 1894, c. 349, § 1, Schedule H, par. 244, 28 Stat. 589 [U. S. Comp. St. 1901, p. 1654]. By the tariff act of 1897 (Act July 24, 1897, c. 11, § 1, Schedule H, 30 Stat. 174 [U. S. Comp. St. 1901, p. 1654]), which was in force at the time of the passage of the war revenue act, it is provided in paragraph 296, that "still wines including ginger wine or ginger cordial and vermouth" shall pay duty in proportion to the amount of alcohol therein contained, provided that any "wine, ginger cordial or vermouth imported containing more than 24 per cent. of alcohol shall be classed as spirits and pay duty accordingly." The reciprocity section (3) of the same act of 1897 speaks of "still wines and vermouth."

As was done in Seeburger v. Castro, 153 U. S. 32, 14 Sup. Ct. 766, 38 L. Ed. 624, it seems to me necessary to interpret the internal revenue act in harmony with the tariff legislation of the country. From the foregoing résumé of tariff acts, it is, I think, clear that at no time has any revenue act of the United States regarded vermuth as a wine. It is in composition quite as much changed as the "Bovrill wine," which was refused classification with wine in United States v. Shoemaker (C. C.) 84 Fed. 146, a case decided under the tariff act of 1890 (above quoted).

Again, the use of the word "including" in the later tariff statutes is in my opinion destructive of the defendant's contention. It cannot be denied that, had not vermuth been "included" in the later tariff statutes in the wine schedule, no court would have held vermuth dutiable as a wine. If the word "including" is not to be regarded in the tariff acts as pure surplusage (Hills Bros. v. U. S., 99 Fed. 264, 39 C. C. A. 500; Hiller v. U. S., 106 Fed 73, 45 C. C. A. 229), it cannot I think be successfully argued that vermuth was intended to be taxed as a wine, or with wines, in the war revenue act of 1898.

The plaintiffs are entitled to judgment, but, inasmuch as their purchases of revenue stamps were of large quantities, and evidently for other purposes than that of paying unlawful taxes on vermuth, they are entitled to interest only from the date of their demand.

It is therefore directed, in accordance with the stipulation herein, that judgment be entered for the plaintiffs and against the defendant in the sum of $7,603.20, with lawful interest thereon from June 27, 1902, and with costs to be taxed.