**STERLING CIDER CO., Inc., v. HASSETT, Collector of Internal Revenue.**
No. 3794.

Circuit Court of Appeals, First Circuit.

Jan. 27, 1943.

Clifford H. Byrnes, Hale, Sanderson, Byrnes & Morton, and Edward R. Hale, all of Boston, Mass., for appellant.

Benjamin H. Pester, Julian D. Simpson, Atty., Dept. of Justice, Joseph Lawrence, Director, Bond and Spirits Division, Dept. of Justice, and Harry B. DeAtley, Asst. to Director, all of Washington, D. C., and Edmund J. Brandon, U. S. Atty., and George F. Garrity, Asst. U. S. Atty., both of Boston, Mass., for appellee.

Before MAGRUDER, MAHONEY, and WOODBURY, Circuit Judges.

MAHONEY, Circuit Judge.

This action was brought pursuant to Section 24 of the Judicial Code, 36 Stat. 1091, 28 U.S.C.A. § 41, Subds. (1 and 5), seeking a refund of $429.60, wine tax, paid November 14, 1940, with interest from that date. The tax was imposed under the provisions of Section 3030(a) (2),[1] 26 U.S.

---

[1] "§ 3030. Tax. (a) Rate * * *
"(2) Sparkling wines, liqueurs, and cordials. Upon the following articles which are produced in or imported into the United States, after June 26, 1936, or which on the day after such date are

C.A. Int.Rev.Code, 53 Stat. 347, and computed at the rate of 2½ cents on each one-half pint or fraction thereof of sparkling wine allegedly produced by appellant and subject to the tax. The case was tried before a jury. A verdict was returned in favor of the government and judgment entered thereon. We think that the judgment of the court below is correct.

The appellant is engaged in the manufacture of cider. The tax in question was imposed upon the product manufactured by it called "sweet sparkling cider". The process used in producing this product is as follows: Apples are pressed and the apple juice is then placed in a glass container which is sealed at the top and bottom in order to retain the carbon dioxide. Fermentation is controlled and when the apple juice reaches the desired alcoholic content it is run through a special germ proof filter which takes out all of the yeast plant so that the product may be kept indefinitely and is not subject to further fermentation. The result obtained is that the product manufactured has a definite alcoholic content, in this case about 3%, and a sparkling appearance resulting from natural carbonation.

We are asked to determine whether appellant's cider is an apple wine within the provisions of Section 610, 40 Stat. 1109[2] (1918), amending 39 Stat. 783, Sec. 401 (1916) as amended by 49 Stat. 1957, Sec. 330 (1936). This section provides that natural wine "within the meaning of this Act shall be deemed to be the product made from the normal alcoholic fermentation of the juice of sound, ripe grapes". In 1936, Congress passed an amendment to this section which provides that: "The provisions of the internal-revenue laws applicable to natural wine shall apply in the same manner and to the same extent to * * * apple wines, which are the products * * * of normal alcoholic fermentation of the juice of sound ripe * * * apples". In order to determine whether appellant's product is an apple wine we must first decide whether it falls within the definition of a natural wine, which Congress defined in Section 610. Appellant contends

on any winery premises or other bonded premises or in transit thereto or at any customhouse, there shall be levied, collected, and paid, in lieu of the internal-revenue taxes imposed thereon by law prior to such date, taxes at rates as follows, when sold, or removed for consumption or sale:

"On each bottle or other container of champagne or sparkling wine, 2½ cents on each one-half pint or fraction thereof; * * *."

[2] "Sec. 610. That natural wine within the meaning of this Act shall be deemed to be the product made from the normal alcoholic fermentation of the juice of sound, ripe grapes, without addition or abstraction, except such as may occur in the usual cellar treatment of clarifying and aging: Provided, however, That the product made from the juice of sound, ripe grapes by complete fermentation of the must under proper cellar treatment and corrected by the addition (under the supervision of a gauger or storekeeper-gauger in the capacity of gauger) of a solution of water and pure cane, beet, or dextrose sugar (containing, respectively, not less than 95 per centum of actual sugar, calculated on a dry basis) to the must or to the wine, to correct natural deficiencies, when such addition shall not increase the volume of the resultant product more than 35 per centum, and the resultant product does not contain less than five parts per thousand of acid before fermentation and not more than 13 per centum of alcohol after complete fermentation, shall be deemed to be wine within the meaning of this Act, and may be labeled, transported, and sold as 'wine,' qualified by the name of the locality where produced, and may be further qualified by the name of its own particular type or variety: And provided further, That wine as defined in this section may be sweetened with cane sugar or beet sugar or pure condensed grape must and fortified under the provisions of this Act, and wines so sweetened or fortified shall be considered sweet wine within the meaning of this Act.

"The provisions of the internal-revenue laws applicable to natural wine shall apply in the same manner and to the same extent to citrus-fruit wines, peach wines, cherry wines, berry wines, apricot wines, and apple wines, which are the products, respectively, of normal alcoholic fermentation of the juice of sound ripe (1) citrus-fruit (except lemons and limes), (2) peaches, (3) cherries, (4) berries, (5) apricots, or (6) apples, with or without the addition of dry cane, beet, or dextrose sugar (containing, respectively, not less than 95 per centum of actual sugar, calculated on a dry basis) for the purpose of perfecting the product according to standards, but without the addition or abstraction of other substances, except as may occur in the usual cellar treatment of clarifying or aging."

that the phrase "normal alcoholic fermentation" is synonymous with "complete fermentation" or within 1% of complete fermentation. We are not convinced that this interpretation urged by appellant should be adopted. In Funk & Wagnalls, New Standard Dictionary, synonyms for the term "normal" are common, natural or ordinary. We think this is the sense in which the word is used in the statute. As an adjective it is descriptive of the process of fermentation and does not refer to the alcoholic content of the resultant product. Reading the statute in such a manner, it follows that natural wine is the product from the *ordinary* alcoholic fermentation of the juice of sound, ripe grapes. Insofar as a determination of the alcoholic content of the resultant product is concerned, it seems that the term normal might have been completely omitted from the definition of a natural wine. If Congress, in defining natural wine, intended that the resultant product should have a definite alcoholic content, it could easily have so stated. In the same paragraph it uses the term "complete fermentation" showing clearly that when it sought to address itself to completely fermented grape juice, it knew how to do so. If Congress intended to give the same effect to both of these phrases, we may assume that it would not have varied the language. To do this without intending to vary the meaning would simply be confusing and we see no justification in attributing such inaccuracy to Congress.

The crux of appellant's argument is that cider has always been treated sui generis and that apple cider is something different from apple wine, the term used in the taxing statute. From this the appellant concludes that since its product is a cider, it is, therefore, not subject to the tax levied upon apple wines. It is true, as appellant urges, that earlier legislation, specifically the tariff acts,[3] classified cider separately from wine. Appellant cites Sterling Cider Co. v. Casey, D.C. 1923, 285 F. 885, 886 and Tower & Sons v. United States, 1921, 11 Cust.App. 157 in support of its position. In Sterling Cider Co. v. Casey, supra, the court construed a taxing statute so as not to include cider in a single category with beverages, and in Tower & Sons v. United States, supra, the court construed fruit juice and fruit wines as being different from cider. We think both of these cases are correct but this does not prove that Congress, when it used the language "products * * * of normal alcoholic fermentation of * * * apples" did not intend to include appellant's cider within the statute. Certainly there can be no dispute as to the Congressional power to tax apple cider with any alcoholic content as a wine.

Appellant's expert, B. L. Crawford, stated that apple juice completely fermented contains about 7% alcohol and that completely fermented apple juice is still classified in the trade as a cider. Pursuing this same line of argument, the appellant makes the following statement in its brief:

"In view of this consistency of Congress in separately classifying cider as '*sui generis*' it is reasonably to be inferred that in the case at bar Congress did not include cider in absence of an *eo nomine* designation.

"'Apple wine' is a term applied to an entirely different type of product from cider. Apple wine has been produced for many years. It was a product made from the fermentation of cider to which 30 to 50 pounds of sugar per 50-gallon barrel had been added so as to attain an alcoholic content of about 13 per cent and which was frequently thereafter fortified with brandy."

We think this argument proves too much. As appellant's expert pointed out, completely fermented apple juice is still a cider and yet the appellant does not dispute the fact that under this statute completely fermented apple juice is treated as a wine. In fact, the basis of its position is that the language "normal alcoholic fermentation" means "complete fermentation" and that since its product is only partially fermented it is, therefore, not a wine. Thus, it is clear that what is actually a cider is taxed under this statute as an apple wine, and that the term "apple wine" is not being used in its customary sense. With the distinction between apple cider and apple wine destroyed, the history of the *sui generis* classification of apple cider is of little help to us in determining whether appellant's product, which is admittedly an apple cider, may be taxed as an apple wine under this statute.

---

[3] Hawley-Smoot Tariff Act, 46 Stat. 635 (1930), 19 U.S.C.A. § 1001, par. 738. Fordney-McCumber Tariff Act, 42 Stat. 893, § 1, par. 738 (1922). Underwood Tariff Act, 38 Stat. 133, § 1, par. 202 (1913).

Appellant contends that its product "Sweet Sparkling Cider" is not within Section 610 because a natural wine is a dry wine, and the essential characteristic of a dry wine is that it shall contain less than 1% of sugar. Since the sugar content of appellant's product is 8.66 per centum, it follows that its product was improperly taxed. The regulations, Article III (1937), do not define a natural wine as a dry wine nor do they specifically state that a dry wine is a wine without any sugar content. They merely say: "(b) 'natural wine' shall mean wine produced in accordance with the first paragraph of Section 610 of the Revenue Act of 1918, as amended", and "(f) dry wine shall mean unfortified wine". We assume that implicit in appellant's argument is the thought that in order to produce a dry wine it is necessary that complete fermentation shall take place and that since according to its interpretation of the statute the phrase "dry wine" is synonymous with the phrase "natural wine", therefore, Congress in using the term normal alcoholic fermentation meant complete fermentation. We cannot accept this argument. From a reading of Section 610 it is clear that Congress sought to distinguish between natural wine and wines to which sugar and water are added in order to correct their natural deficiencies. The contention that the terms natural wine and dry wine are synonymous finds no support in the statute. While we may assume that appellant's contention is correct that a dry wine is a wine with a negligible sugar content and that a dry wine is a natural wine, it does not follow that a wine resulting from a partial fermentation is not also a natural wine.

In order to prove that there was no Congressional intent to tax apple cider as an apple wine, appellant has referred us to sections of the Congressional Record[4] covering the debates in Congress which deal completely with the wine question prior to the passage of the 1916 Act. It is the contention of the appellant that the Congressional Record clearly demonstrates that the purposes which led to the passage of the taxing statute were to give to eastern wine manufacturers the right to increase the volume of their product by the addition of sugar and water and to permit them to fortify their wine as inexpensively as could California wine producers who, prior to the passage of the 1916 Act, had a real advantage over eastern wine producers in the matter of fortification. Further, that the inclusion of apple wine in the 1936 amendment was merely to grant the same privileges of fortification to apple wine producers as was granted in the earlier legislation to grape wine producers. On the basis of this legislative history, it is contended that the Liquor Taxing Act is in no real sense a taxing statute and that Congress never intended to extend the scope of apple wine so as to include within the statute apple cider. We have carefully examined the references to the legislative history and we conclude that appellant's statement of the reasons for the passage of the 1916 Act and the 1936 amendment are substantially but not entirely correct. The passage of the 1916 Act was the result of legislative agitation against the advantage held by California wine producers, but the Act as passed was "An Act to increase the revenue, and for other purposes."[5] Thus, while the Act had as one of its primary objectives the granting to eastern wine producers the same advantages as were then given to California wine producers, it was, nevertheless, a taxing statute. In 1936, the amendment to the 1916 Act which included apple wines within the definition of a natural wine, gave to apple wine producers certain definite advantages and at the same time brought it within the provisions of the taxing act.

An argument advanced by appellant is that the taxing act in question should be construed in pari materia with other acts, notably the Federal Alcohol Administration Act, 27 U.S.C.A. § 201 et seq. (1935). That Act contains the following provision:
"§ 211. Definitions * * *

"(6) The term 'wine' means (1) wine as defined in sections 610 and 617 of the Revenue Act of 1918, as now in force or hereafter amended, and (2) other alcoholic beverages not so defined, but made in the manner of wine, including sparkling and carbonated wine, wine made from condensed grape must, wine made from other agricultural products than the juice of sound, ripe grapes, imitation wine, compounds sold as wine, vermouth, cider, perry and sake; in each instance only if containing not less than 7 per centum and not more than 24 per centum of alcohol by volume, and if for non-industrial use."

---

[4] 53 Cong. Rec. 13,300 et seq.

[5] 39 Stat. 756, Ch. 463 (1916).

The contention is made that the 7% requirement should be read into the taxing statute. The appellant asserts that since its product which it offers for sale contains only 3% alcohol, it is, therefore, not a wine, and reading the definition of wine found in the Administration Act into the Taxing Act, it is improper to tax the product which appellant offers for sale. We do not find any justification for construing the Federal Alcohol Administration Act and the Liquor Taxing Act in pari materia. The former is concededly a labeling act, and the statute which we have to construe is essentially a taxing act. It is perfectly consistent to give force to both of these Acts without qualifying in any way the language of the taxing statute.

We do not believe that Taylor v. Treat, C.C., 153 F. 656, affirmed 2 Cir., 1908, 166 F. 1021 and Carter v. Liquid Carbonic Pacific Corporation, 9 Cir., 1938, 97 F.2d 1 cited by appellant, control our decision in any way. Taylor v. Treat, supra, involved the War Revenue Act of 1898, 30 Stat. 463, which provided for the payment of a certain tax on sparkling and other wines by cancellation of internal revenue stamps. Plaintiffs, importers and dealers in Italian vermouth, sought a refund on the ground that the Collector erroneously compelled them to pay for and affix stamps to imported bottles of vermouth. They claimed that vermouth was not within the classification of "sparkling or other wines". The district court sustained their position and held that vermouth was not taxable under the terms of the applicable statute. The case is not in point because the tax on "sparkling or other wines" did not include any qualifying phrase which made the inclusion of vermouth mandatory within the terms of the Act. Vermouth had been treated *eo nomine* in other statutes, and thus the court was correct in refusing to include it within the general wine classification. Similarly, in that case it would have been error to include cider within such a classification as "sparkling or other wines", but Congress has gone further in the instant case. Here, it has said that any product from apple juice which results from normal alcoholic fermentation is subject to the tax. Had Congress merely used the term "apple wine" without the qualifying phrase "products of * * * normal alcoholic fermentation", it could validly have been argued that apple cider does not fall within the terms of the statute.

Carter v. Liquid Carbonic Pacific Corporation, supra, turned on whether beer containing more than ½ of 1% alcohol by volume and not more that 3.2% of alcohol by weight, and made legal beer under the Beer Act of 1933, 48 Stat. 16, was a carbonated beverage or soft drink within Section 615(a) (7) of the Revenue Act of 1932, 26 U.S.C.A. Int.Rev.Acts, page 614. The tax was imposed upon carbonic acid gas sold to brewers for use by them in the manufacture of beer. The term "beer" was found to have a definite meaning in the trade as did the phrase "carbonated beverages". While in the broader sense beer is a carbonated beverage, here as in Taylor v. Treat, supra, the court was not bound by any qualifying phrase. It thus concluded that the statute applied only to soft drinks, and that 3.2 beer could not properly be considered a soft drink.

We are impressed by the fact that the statute under consideration deals not alone with apple wine. It includes wines from grapes, citrus fruits, peaches, cherries, pears and apricots as well as apples. Any product which results from a normal alcoholic fermentation of the aforementioned fruits is considered a wine. Acceptance of the argument of appellant that normal alcohol fermentation means complete fermentation leads to the conclusion that grape wine resulting from the partial fermentation of grape juice, or berry wine from the partial fermentation of berry juice, is not includible within the taxing statute. We do not believe that Congress intended to permit wines resulting from the partial fermentation of fruit juices other than apples mentioned in the statute to escape taxation. This being so it cannot seriously be contended that a distinction should be drawn between the product resulting from the partial fermentation of apple juice and the partial fermentation of the other fruit juices. We do not see how the product resulting from the partial fermentation of apples alone may be withdrawn from the scope of the statute.

It is contended by appellant that substances were abstracted other than such as occur in the usual cellar treatment of clarifying and aging. It is true that the process used by the taxpayer in removing the yeast plants from the apple juice was a novel one, but we do not believe that there was any addition or abstraction so as to change the nature of the resultant product. What was produced by this new process

was no different from the result obtained in the usual cellar treatment of clarifying and aging.

It appears that the regulations do not cover precisely sweet sparkling cider as produced by this taxpayer. Regulation 7 (1937) par. 3 provides:

"(j) 'Champagne' and 'sparkling wine' shall mean effervescent wine charged with carbon dioxide, resulting from secondary fermentation of the wine."

The sparkling characteristic in appellant's product was not the result of secondary fermentation and thus does not fall within the precise language of the regulation. We are governed, however, not by the regulation but by the language of the statute. The fact that this sparkling quality is ordinarily obtained by secondary fermentation seems to be the basis for the regulation. The appellant by means of its process was able to accomplish the same result by natural carbonation without resorting to secondary fermentation. We are of the opinion, however, that it falls within the explicit terms of the statute which provides a tax "on each bottle or other container of champagne or sparkling wine." Since we have determined for purposes of taxation that the cider produced by appellant is a wine, and, since it has a sparkling characteristic, it was properly taxed.

The appellant contends that the tax upon sweet sparkling cider is high in view of the fact that the same tax is placed upon champagne. The answer to this contention lies in the fact that under a proper interpretation of this statute appellant's product is treated as a sparkling wine. While this result may be harsh, it is a matter for legislative action and not for us.

There is evidence that the government did not seek to collect this tax from producers of apple juice such as cider produced on farms. This fact does not, of course, negative the government's right to collect such tax, or more particularly to impose a tax on appellant's product. That those in charge of the administration of the act have not asserted the right to place a tax upon cider produced on farms may be the result of administrative expediency. It has no effect in the determination of the instant case.

The judgment of the District Court is affirmed.