(C.D. 2344)

BERCUT-VANDERVOORT & CO. *v.* UNITED STATES

United States Customs Court, Third Division

(Decided June 4, 1962)

*Lawrence & Tuttle* (*Edward N. Glad* and *Barnes, Richardson and Colburn* of counsel) for the plaintiff.

*William H. Orrick, Jr.*, Assistant Attorney General (*Richard E. FitzGibbon*, trial attorney), for the defendant.

Before JOHNSON, DONLON, and RICHARDSON, Judges

RICHARDSON, Judge: The merchandise, which is the subject of two protests that were consolidated for trial, was described on the invoices covered by the consumption and warehouse entries as "Aperitif Wine Byrrh 18°." The question raised in this proceeding is whether the merchandise, an alcoholic beverage for human consumption, is classifiable and dutiable as a still wine, or whether it is classifiable and dutiable as a vermouth.

The merchandise was exported from Thuir, in southeastern France, on October 8, 1957, and March 28, 1958, and entered at the port of San Francisco, Calif., on November 13, 1957, and May 1, 1958, respectively. Upon the appraiser's advisory classifications, the merchandise was classified by the collector as still grape wine and assessed with duty at the rate of $1.25 per gallon under paragraph 804 of the Tariff Act of 1930. Other assessments of duty on the glass bottles and internal revenue taxes were also made, but are not in dispute between the parties. Upon liquidation of the entries, timely protests were filed by the importer-plaintiff against the collector's classification and duty assessment on the involved entries. As claimed in the protests, it is plaintiff's contention that the merchandise is a vermouth

and that it is properly dutiable at the rate of $0.28 per gallon under paragraph 804, as modified by T.D. 54108.

Paragraph 804 of the Tariff Act of 1930 reads in part:

Still wines, including ginger wine or ginger cordial, vermuth, and rice wine or sake, and similar beverages not specially provided for, $1.25 per gallon * * *.

Insofar as is here material, T.D. 54108 reads:

| Tariff Act of 1930, paragraph | Description of Products | Rates of Duty | |
|---|---|---|---|
| | | A | B |
| 804 | Vermuth:<br>  In containers holding each 1 gallon or less. | * * * | 28¢ per gal. |

The case was submitted upon the official papers and the testimony of one witness who was called by the plaintiff. This witness, a Mr. Henry J. Vandervoort, is the vice president of the plaintiff-importer firm and has been associated with the firm since its inception in 1947. The business of the plaintiff is the importing and wholesale selling of wines, vermouths, spirits, and beers. Mr. Vandervoort's duties in the firm consist of general administration and sales management in the United States and the purchasing of the imported merchandise in Europe, making on the average of one trip a year to Europe. From his experiences in the business, Mr. Vandervoort gave testimony concerning the preparation and uses of both the involved merchandise—"Aperitif Wine Byrrh 18°"—and of vermouth and produced samples of both types of merchandise handled by his firm, which were offered and received in evidence (plaintiff's exhibit 1 and plaintiff's illustrative exhibit 2).

Concerning the preparation of the involved merchandise, Mr. Vandervoort testified (R. 8–9):

As far as I was able to determine by visiting the plant, the wines are brought in from the surrounding region, which is a great wine-producing area, southeastern France. The wine is brought into this particular plant, once it is already a wine, usually made from 11½ to 12½ by volume. To that is added a sufficient alcohol to bring up the product to about 18 percent, and thereafter it is macerated over herbs.

With respect to the use to which this beverage is put in the United States, the witness testified (R. 9):

This is consumed as vermouth, as an aperitif; in other words, you take a glass and you put a piece of ice in it, and you pour this over it and drink it as it is, or else you add a bit of lemon peel over it.

According to Mr. Vandervoort, the preparation of vermouth and the uses to which vermouth is put are the same as for the involved

merchandise, adding the fact that to both types of beverages may be added a variety of spirits, such as gin or whisky.

As regards the uses to which still wines are put, the witness testified that such beverages were consumed during mealtime to the accompaniment of food. And he also stated that neither the involved merchandise nor vermouth were consumed with meals.

Plaintiff argues that Aperitif Wine Byrrh is a trade name of a particular sweet vermouth of an Italian type made in France and that it is consumed as a beverage in the same manner as are all other vermouths. Defendant, on the other hand, maintains that a similarity of uses to which both the involved merchandise and vermouth may be put, does not establish that the involved merchandise is a vermouth.

In our opinion, the evidence adduced by the plaintiff does not rebut the presumption of correctness which attaches to the collector's classification of the involved merchandise. The most that we can conclude from the uncontroverted evidence is that "Aperitif Wine Byrrh 18°" is made and consumed in a manner similar to a vermouth. Nothing more than this can be inferred from the holding in *Bustanoby Brothers* v. *United States*, 5 Treas. Dec. 797, T.D. 24052, cited and apparently relied upon by the plaintiff. In that case, the issue before the general appraiser was whether a product, imported from France and known as "byrrh wine," was dutiable at the rate for still wine and vermouth or at the rate for an alcoholic medicinal preparation. The general appraiser found from the evidence that it was "a still wine similar to vermuth or quinquina dubonet." In any event, it is settled law that classification of the merchandise by similitude cannot be invoked where the merchandise has been directly provided for under the tariff classifications. *United States* v. *Stouffer Co.*, 3 Ct. Cust. Appls. 67, T.D. 32351. And plaintiff's willingness to concede that the merchandise, covered by the instant protests, is taxable as a "still wine" under 26 U.S.C.A., section 5041(b)(2), while resisting the classification of this merchandise as a "still wine" for duty purposes, lends no support to its position here.

Proof that the involved merchandise is, in fact, a vermouth, as distinguished from being similar to a vermouth, has not been made in our opinion. Although plaintiff argues that the designation "Aperitif Wine Byrrh" is a trade name of a particular sweet vermouth, no evidence of such fact has been offered. All that appears from the record is that the word "Byrrh," as used on the commercial invoices and container labels, has some proprietary origin and association with the product. In fact, plaintiff's witness testified that he had never heard of a still wine that was subjected to the processing which he later described for the imported merchandise, being still referred to as a wine and not as a vermouth (R. 5). And yet, the designations on the invoices and labels refer to the merchandise in French and in English

as a wine and not at all to it as a vermouth, although that term is as much understood and used in France as in the United States. See: *Taylor* v. *Treat*, 153 F. 656, *infra*. Under these circumstances, we can only conclude that the manufacturer-seller of this product regarded the merchandise as a wine, in the absence of any evidence to the contrary. And the rather fixed character of the printed invoice description of the product tends to give such designation a degree of stability and permanence with respect to the description of the line of merchandise handled by the exporter.

While we do not regard the matter of invoice printing and container labeling as being conclusive on the question as to the identity of the product, nevertheless, such indicia are somewhat persuasive. Neither are we able to conclude from the evidence that the use of the word "wine," in describing the merchandise in question, is an unfortunate choice of language or a misnomer.

In *Taylor* v. *Treat*, 153 F. 656, the court held that a vermouth was not a wine and, as such, was not subject to an internal revenue tax levied on "sparkling or other wines." The court there stated (p. 657) :

As to the composition and principal ingredients of vermuth, there can be no doubt, whether the French or Italian article can be considered. The basis of manufacture is a white wine, frequently a blend or mixture of several wines of varying cost, to which is added sufficient alcohol to raise the spirituous proportion to about 15 per cent., and the mixture is completed by the addition of herbs, spices, and sugar in quantities and proportions depending on the manufacturer's taste and tradition—but always including some wormwood, from the German name for which plant the finished product takes its title—and both name and thing have been known in the countries of origin for more than 100 years. It is, I think, proven that while both here and abroad vermuth is commonly referred to by that name only, the complete title of the product is in Italy "vino vermouth," and in France "vin de vermouth"—names sufficiently recognizing its vinous nature.

The court further discussed the uses to which vermouth is put both abroad and in the United States, stating, among other things (p. 657) :

* * * In American commercial usage, as evidenced by trade circulars and advertisements, it is never classed with wines, and if with any other drinkables, with cordials and liquors ; but usually it figures alone, as though sui generis. * * *

The court concluded its discussion of the comparison between wine and vermouth by stating (p. 658) :

* * * I therefore find that the fluid has no other trade name or frame except as vermuth simpliciter, and is in the minds of American dealers and consumers an article of its own class, having no more mental relation to wine than chartreuse has to brandy.

The holding of the court in *Taylor* v. *Treat*, *supra*, was affirmed in the Circuit Court of Appeals, second circuit, on the opinion of the court below (166 F. 1021).

Of course, the *Taylor* case was decided at the beginning of the century. But our attention has not been called to any circumstances in the record before us which convinces us that the manufacture and usage of wines and vermouths of today differ from the manufacture and usage of those beverages at and during the turn of the present century.

Thus, it is not unreasonable for us to expect that, since the beverage in question was bottled and labeled for the American market, somewhere in the label this merchandise would have been identified as a vermouth instead of as a wine, if such be the fact. Nor is it unreasonable for us to expect that, since the manufacture of vermouth had its origin in France and Italy and has a well-defined and understood meaning in those countries, somewhere on the commercial invoices filed with the official papers herein would have appeared in print the words "Byrrh vin de vermouth" in place of the words "Byrrh vin apéritif," if this merchandise had been regarded as a vermouth and not as a wine. Moreover, we are unable to ascertain from the evidence that one of the ingredients of the beverage in question consists of wormwood, without which the product could not properly be classified as a vermouth. By definition, vermouth is "A liqueur made from a fortified white wine, and flavored with wormwood and other substances." (Webster's New International Dictionary, 1930 ed.) And no cogent reason exists why we should assume that the product does contain such an ingredient, in the absence of evidence of such fact. Under all of the circumstances, we find and hold that the plaintiff has failed to prove that the imported merchandise, Aperitif Wine Byrrh 18°, is not a still wine and properly classifiable and dutiable as such.

Judgment will, therefore, be entered in favor of the defendant overruling the protests.